## MRS. JESSIE P. KELLER V. HUGH R. KELLER.

No. 7525.  Decided June 12, 1940.
Rehearing overruled September 25, 1940.
(141 S. W., 2d Series, 40.)

*J. C. Hutcheson III,* of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the compensation received by defendant during the year 1933 from the Cooper-Keller Oil Company was dividends instead of salary, as he received no other compensation for that year, and the reason why no salary had been drawn during the year was because it was anticipated that some amount would be setup at the close of the year as his salary, and the sum of $20,000.00 was setup with the approval of all the stockholders and officers as his salary and carried on the books as such until it was finally paid. Creamer v. Briscoe, 101 Texas 490, 109 S. W. 911; Norton v. Cantagrel, 60 Texas 538; Austin v. United States, 28 Fed. (2d) 677.

*Williams, Lee, Sears & Kennerly* and *Geo. D. Sears,* all of Houston, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The suit was filed by Mrs. Jessie P. Keller against her former husband, Hugh R. Keller, to recover her interest in certain items of community property which she alleges were not partitioned or awarded to either party in a property settlement made upon the granting of Mrs. Keller's petition for divorce about two years before the filing of the present action. The trial court before whom the case was tried without a jury denied plaintiff any recovery, and, in addition, corrected and supplemented the divorce judgment in the manner hereinafter stated.

The Court of Civil Appeals reversed the judgment of the trial court and allowed plaintiff recovery of one-half of one

of the items sued for as having been omitted from the settlement, but in other respects, except as to costs of the trial court, affirmed the judgment. 122 S. W. (2d) 270.

The background of plaintiff's suit and the grounds upon which it was based, are clearly stated by the Court of Civil Appeals as follows:

"In contemplation of divorce appellant and appellee entered into an agreement dividing specified items of community property, and setting aside to appellant her separate property, on November 16, 1933. This agreement was incorporated in the divorce decree which was rendered on December 22, 1933. The agreement has no general or residuary clause awarding to either party any property not therein included. The following three items of property were not, eo nomine, included in the settlement, nor in the decree embodying the settlement, and appellant alleged that they were community property, and that she and appellee remained the owners of such property after their divorce, unaffected by the settlement agreement and decree.

"First Item: An indebtedness of $21,000 owing to appellee at the time of such settlement by the Cooper-Keller Oil Company, which was paid to appellee in full, five days after the divorce decree.

"Second Item: An item of $20,000 owing to appellee by the Cooper-Keller Oil Company as salary for the year 1933, and which was paid to him in full about the end of 1934.

"Third Item: 50 shares of the capital stock of the Cooper-Keller Oil Company, of the value of $46,250.

"* * *. As to the fifty shares of stock, appellant concedes that it was the intention of the parties that it should have gone to appellee by the terms of the agreement, for she knew that one-half of the shares of the capital stock was the community property of herself and appellee, but by a mutual mistake it was supposed that the capital stock consisted of 100 shares, whereas, in reality, it consisted of 200 shares, so that in apportioning the stock in the corporation to appellee the parties should have described it as 100 shares, instead of 50 shares, as they in fact did. She concedes that this error should have been corrected by reforming the settlement agreement, except that she asserts appellee has cut himself off from the right to this equitable remedy, by having deceived her with respect to items No. 1 and No. 2. She claims, therefore, that as to the remaining fifty shares of stock, that she must be decreed an interest therein, or receive reparation therefor, in consequence of appellee having no right to have the settlement agreement reformed

to carry into effect the mutual understanding that appellee should have all the stock in the Cooper-Keller Company."

■ This Court is in accord with the holding of the Court of Civil Appeals with respect to the first item, which is, briefly, that Mr. Keller, during the period of the martial partnership, made the $21,000.00 advancement in question to the corporation, and that the marital partners were entitled to share it equally upon payment by the corporation. See the portions of the opinions of the Court of Civil Appeals dealing with that item on original hearing (p. 272) and on rehearing (p. 274, column 1).

■ We are in accord also with the court's holding with respect to the third item sued for by Mrs. Keller.

That it was intended by the parties in their property settlement that Mr. Keller was to receive all of the stock owned by the community estate in the corporation (Cooper-Keller Oil Co.) is not questioned by Mrs. Keller. Nor is it questioned by her that there was an error in describing in the settlement contract the interest he was acquiring in the corporation, as 50 rather than 100 shares of the capital stock of the corporation, as appears from the following stipulation made by counsel for Mrs. Keller upon the trial of the present case:

"It is stipulated and agreed that at the time of the execution of the settlement contract, both of the parties thought that fifty shares of stock in the Cooper-Keller Oil Company was all the stock in the company owned by the community, and that fifty shares represented one-half of the stock of the company."

The settlement contract, which is incorporated in the divorce judgment, provides that "if there are any errors in the description of the property (covered by the contract), or if the property is not fully or completely described, such errors may be corrected and such description supplemented."

In view of what has been stated it is clear the trial court did not err in correcting and supplementing, in the present judgment, the description of the interest acquired by Mr. Keller, so as to describe correctly the interest both parties intended he should receive. The Court of Civil Appeals correctly affirmed the trial court's action in denying Mrs. Keller recovery of any portion of the capital stock of the corporation.

We are not in accord with the holding of the Court of Civil Appeals with respect to item No. 2, supra, referred to as an indebtedness by the corporation to Mr. Keller for salary for

the year 1933. It was the assignment complaining of error on the part of the court in holding that the $20,000.00 item was not salary, upon which the writ was granted.

It should be borne in mind at the outset of the discussion of this holding that this is not a suit for division between the parties of the properties which they owned at the time of making the contract in contemplation of divorce. The parties themselves did that by an agreement which they incorporated in the decree entered in the divorce action. Nor is it the purpose of the suit to have the court make a repartition of the properties on an equitable basis to be fixed by the court. Its purpose, so far as the present item of $20,000.00 is concerned, is to determine whether this item, at the time the divorce was granted, constituted, when paid, a profit that passed to Mr. Keller as an incident to the ownership of the stock acquired by him, or constituted a portion of the community property of the Kellers.

■ This item, if salary, belonged to the marital partners in equal parts. The testimony that it was not apportioned between the parties is uncontroverted, unless it passed to Keller as an incident to ownership of the stock which was received by him in the settlement.

It is the view of the Court of Civil Appeals as expressed in its opinion, that while this $20,000.00 was set up on the books of the corporation as salary it was in fact not salary, but an "entry * * * made in order to lessen income tax." See opinion on rehearing, p. 275, 1st column.

The uncontraverted testimony of the auditor of the corporation with regard to the corporation's profits during 1933, is as follows:

"Q. I believe one of the things I asked you before lunch to get for us was the total net profits made by the Cooper-Keller Oil Company during 1933. Do you have that?

"A. Yes, sir.

"Q. What was that?

"A. As reported on the income tax, $13,983.21. That is net, as it would appear on the statement. There would be $40,000.00 added to it for the two salaries.

'Q. You deducted those salaries (Keller's and Cooper's) in making your income tax return?

"A. Yes, sir, they are allowable.

"Q. Before deducting those salaries, what was it?

"A. $53,983.21."

He testified in this connection also that at the close of 1933

the company could not disburse the $53,000.00 representing profits for that year because they were tied up in receivables and oil stock; that the $40,000.00 setup as salaries operated to reduce the corporation's income tax payment and that the company was unable to pay the salaries until near the end of 1934.

Mr. Keller himself testified that when he filed his income tax return showing his income for the year 1933 he showed it as community income. In response to an inquiry as to what his salary was for the year 1933 he stated it was $20,000.00, and that it was arrived at as follows:

"Q. Mr. Keller, your salary for the year 1933, what was that, will you tell us, please?

"A. $20,000.00.

"Defendant in error then testified as to the manner in which this salary was arrived at, as follows:

"Q. At the end of the year you would balance your books, find out how much profit you had made and spit that profit between you and Mr. Cooper?

"A. Yes, sir.

"Q. And set that up on the books as your salary for the preceding year?

"A. Yes.

"Q. Sometimes you would draw that in cash, sometimes you didn't think the company's condition permitted the withdrawal immediately and you would set it up as a liability of the company?

"A. We would permit it to remain in the company and would not take it out at all.

"Q. You would set it up as a liability to you of the company in that amount, that is the way you did?

"A. That is the way the bookkeeper ran it."

It is immaterial that the salary setup did not "come in," or was not paid, until 1934. It was earned in 1933, and was treated as salary by all of the parties at interest. Keller himself treated it as such in his income tax report for that year, and by calling upon Mrs. Keller to pay a portion of the income tax upon it as a part of the community property in which they were jointly interested.

It is immaterial, in determining whether the $20,000.00 was salary, whether Keller concealed from Mrs. Keller the setup on the books of the company, or that it had not been paid at the time of the settlement. See in this connection the fol-

lowing cases on a somewhat analogous point: Creamer v. Briscoe, 101 Texas 490, 109 S. W. 911; Marlin v. Kosemyroski, 27 S. W. 1042.

It is urged on his behalf that under the trial court's findings the community owned no claim for salary at the time of the divorce. It is undisputed that the item was not paid by the corporation until a few days after the divorce was granted. The trial court finding relied upon by Keller reads in part:

"It is undisputed that the two men (Keller and Cooper) owning this business and due to its speculative and personal nature, pursued a peculiar course. No current salaries were drawn during a current year. At the end of the year, if the company had made a profit, they, in effect, split the pot. In order to lessen the income tax payments, a part of this profit was set up on the books as profit, and a part was set up under the heading of salary. Thus the so-called salary for 1933 was not determined upon or set up until the end of that year. Even then it was not paid for the reason that the company did not have the cash to pay it. It depended upon the further efforts and good fortune of the co-owners to make good this paper salary."

The fact remains, however, that when "this paper salary" was made good (paid) it was *salary* and not something else that was made good.

██ Regardless of the fact that the two owners of the corporation did not know at the time the salary amounts were set up on the books, how much, if any, their salaries would be for the year in which they were set up, the payment, when subsequently made, constituted payment of the salaries set up. The payments made by the corporation were not dividends, or profits, on the stock, as appears from the manner in which the matter was handled. When dividends are declared the corporation becomes indebted to the stockholders for the amounts of their respective shares, and are not subject to change merely at the choice of a stockholder. Yeaman v. Galveston City Company, 106 Texas 389, 167 S. W. 710; Cavitt v. Amsler, 242 S. W. 246; 11 Fletcher Cyc. of Corporation, Sec. 5222.

Whether the salaries were drawn during the current year is immaterial. When paid they were paid for that year and were paid as salaries. This appears from Keller's own statement. He testified in response to an inquiry as to whether at the time the divorce was granted (December, 1933) there was any way to say how much salary he was going to earn, that there was not; that according to his "custom" he waited until

the end of the year and that if the company had any profit he "declared most of it *due as salary* in order to escape income tax." (Italics ours). He drew no other salary for that year.

The parties at interest, including Keller, treated the amounts received as salary, according to the undisputed testimony. He testified in this connection that he got his "so-called" 1932 salary in 1933; that in the spring of 1934 he transmitted to Mrs. Keller a community return; that it showed the amount of his "salary" that had been set up for the year 1933 ($20,000.00), and that he received that "salary" sometimes in 1934.

Regardless of whether the corporation could have elected to treat the item in question as dividends on the stock, it did not do so; nor could Keller lawfully waive his claim to salary already set up and by his mere ipse dixit convert it into dividends, or some form of profit incident to stock ownership, and thereby convert his salary, which was community property, into his separate property.

It is apparent from what has been stated that the Court of Civil Appeals erred in holding that the $20,000.00 was not Keller's salary for 1933, and therefore an undivided item of community property, and in not decreeing one-half of that amount to Mrs. Keller.

The judgment of the Court of Civil Appeals as to this item is reversed, and judgment is here rendered in accord with this opinion. In other respects its judgment is affirmed.

Opinion adopted by the Supreme Court June 12, 1940.

Rehearing overruled September 25, 1940.